Filed 8/12/14  McClanahan v. Gonzalez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| JANICE M. McCLANAHAN, | B243390 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC363659) |
| v. | |
| JAIME GONZALEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Carolyn B. Kuhl, Judge.  Affirmed.

Sottile Baltaxe, Timothy B. Sottile, Jeremy D. Schwerin; Law Offices of Thomas P. Cacciatore and Thomas P. Cacciatore; Pine & Pine, Stacy L. Tillet, for Plaintiff and Respondent.

Orloff & Associates, Paul Orloff for Defendant and Appellant.

_____

In this fraud action, the trial court denied the second motion of defendant and appellant Jaime Gonzalez (Appellant),[1] made pursuant to Code of Civil Procedure section 473, subdivision (d),[2] to set aside the orders permitting service by publication of a statement of damages, entry of default, and default judgment in favor of plaintiff and respondent Janice M. McClanahan (McClanahan).

Appellant contends denial of the motion to set aside was an abuse of discretion. He argues that the motion was not time-barred, because the judgment was void due to defects in service of the summons and complaint, lack of jurisdiction, and extrinsic fraud perpetrated upon the court, and that these issues violated his right to due process. We affirm.

## FACTS AND PROCEDURAL HISTORY[3]

### *Complaint and Service of Complaint*

On December 18, 2006, McClanahan filed a complaint against Harry Mansdorf (Mansdorf)[4] for damages for fraud and deceit, breach of fiduciary duty, and intentional

---

[1] Former defendant and appellant Harry Mansdorf died on August 27, 2012, during the pendency of this appeal. Mansdorf was sued individually and as trustee of the Mansdorf Family Trust. On November 19, 2012, Jaime Gonzalez, as trustee of the Mansdorf Family Trust and co-executor of the estate of Harry Mansdorf, moved for substitution as real party in interest. We grant the motion.

[2] All statutory references are to the Code of Civil Procedure, unless otherwise specified.

[3] The facts are taken largely from our opinion in a previous appeal involving the same parties (*McClanahan v. Mansdorf* (Oct. 21, 2011, No. B224466) [nonpub. opn.]), in which we affirmed the court's denial of Mansdorf's first motion to set aside its orders permitting service by publication of a statement of damages, entry of default, and default judgment pursuant to section 473, subdivision (d).

infliction of emotional distress relating to McClanahan deeding her interest in real property to Mansdorf on December 19, 2003. McClanahan's longtime boyfriend, Lee Mansdorf (Lee), Mansdorf's brother, who died in 2003, had placed the property in McClanahan's name. Mansdorf did not pay McClanahan for the property, telling her the property was virtually worthless and needed to be sold to pay taxes owed by Lee's estate. Mansdorf did not tell McClanahan he sold the property on December 5, 2003, for $600,000. As to each cause of action, the complaint alleged McClanahan was entitled to an award of punitive damages under Civil Code sections 3294 and 3295.

Mansdorf was personally served with a summons and complaint on March 26, 2007, at his home in Beverly Hills, by McClanahan's private investigator, Gregory J. Garrett. Mansdorf did not answer the complaint.

***Statement of Damages and Service of Statement of Damages***

On July 24, 2007, McClanahan filed an ex parte application for an order of publication of statement of damages pursuant to section 415.50, after serving Mansdorf with a copy of the application on July 23, 2007, by mail, addressed to him at his Beverly Hills home. In the application, McClanahan alleged Mansdorf could not with reasonable diligence be found and served in person (§ 415.10), by substituted service (§ 415.20), or by mail service (§ 415.30). In a supporting declaration, Garrett stated he made 14 attempts to serve the statement of damages upon Mansdorf at his Beverly Hills home between June 7 and July 18, 2007. He was not able to contact anyone and serve the document at the address.

On July 24, 2007, the trial court granted the ex parte application, finding, inter alia, Mansdorf could not with reasonable diligence be served by mail.

---

4 Mansdorf's siblings Mildred and Norman were also named as defendants. However, Mildred died on March 5, 2007. Norman died before the suit was filed.

3

*Entry of Default and Default Judgment*

On September 27, 2007, McClanahan mailed a copy of a request for entry of default to Mansdorf at his Beverly Hills home address. On October 2, 2007, a default was entered by the clerk as requested.

On November 1, 2007, McClanahan mailed a copy of a request for judgment in the amount of $12 million, consisting of $10 million as the "demand of the complaint," $1 million in special damages, and $1 million in general damages, plus costs of $922, to Mansdorf at his Beverly Hills address. Mansdorf did not oppose the request. The request for judgment was filed in the trial court on January 23, 2008. A default judgment was entered on January 23, 2008, in favor of McClanahan and against Mansdorf in the sum of $12 million, plus $922 in costs.

*First Motion to Set Aside*

**Motion**

On January 21, 2010, Mansdorf filed a motion under section 473, subdivision (d), to set aside the order for publication of the statement of damages, entry of default, and default judgment, and for permission to file a proposed answer to the complaint. Mansdorf contended the order for publication was void because the declaration in support of the application for publication did not state McClanahan had attempted to serve him by mail under section 415.30. He argued the judgment exceeded the amount prayed for in the complaint, in that the causes of action for fraud, breach of fiduciary duty, and intentional infliction of emotional distress sought no dollar amount of damages, and no statement of damages for the cause of action for intentional infliction of emotional distress was validly served. He asserted the summons and complaint were never properly served, as evidenced by discrepancies in the actual appearance of Mansdorf as compared

4

to the physical description of him in the proof of service. Finally, he argued the judgment was based on a fraudulent deed.

In his declaration in support of the motion, Mansdorf stated that in April 2008, he received a copy of an abstract of McClanahan's $12 million judgment from the Ventura County Recorder. He stated that he had never received any court papers in the case by mail prior to receiving the abstract of judgment. He also contended he was not personally served with the summons and complaint and was not aware a process server tried to serve him at his house in June and July 2007.

**Opposition**

McClanahan contended Mansdorf's motion to set aside the entry of default and default judgment was not timely filed pursuant to section 473.5, and the judgment was not void.

**Trial Court's Ruling**

On March 15, 2010, after considering the pleadings and arguments of counsel, the trial court denied Mansdorf's motion. The court found that service of the summons and complaint by personal and substituted service, and service of the statement of damages via publication, were proper. The court further found the motion was untimely, because the judgment was not void on the face of the official court records and Mansdorf's declaration in support of the motion did not show that his delay in filing the motion was reasonable. Further, "the entire judgment was not shown to be void for including damages stated in a statement of damages served by publication service, where at least some amount was sufficiently set forth in the pleading served by personal and substituted service, of which [Mansdorf] had notice (see, e.g., Complaint, [¶] 19 ('which property [Mansdorf] knew to be worth $600,000.00. . . .').)." "A remedy for addressing a default judgment providing for excessive damages is to amend the judgment by reducing the

5

amount of which the defendant had notice, and not to void the entire judgment." Finally, the court concluded that the contentions concerning legal error were not properly before it, as the trial judge was available and sitting in an adjacent courtroom.

### Appeal

Mansdorf appealed the denial of his first motion to set aside the judgment. He argued that the trial court abused its discretion, because the judgment was void in that service of the statement of damages by publication was improper and the default judgment exceeded the amount of damages requested in the complaint. He did not challenge service of the summons and complaint, or argue that the judgment was based on a fraudulent deed on appeal.

We affirmed the trial court's ruling, concluding that ordering service of the statement of damages by publication was proper because substantial evidence supported the trial court's finding that Mansdorf could not with reasonable diligence be served by mail under section 415.30. We concluded the damages awarded in the judgment did not exceed the amount requested in the complaint because they were specified in the statement of damages, which was properly served, and section 425.10, subdivision (b) prohibited specifically pleading the personal injury and punitive damages. We further held that because the judgment was not facially invalid, the motion to vacate was time-barred.

### *Second Motion to Set Aside*

### Motion

On May 22, 2012, Mansdorf filed a second motion under section 473, subdivision (d), to set aside the order for publication of the statement of damages, entry of default, and default judgment. First, Mansdorf contended that the judgment was facially void due

to defects in service. He argued that jurisdiction was lacking because McClanahan obtained the judgment after serving *Harold* Mansdorf by publication, and that *Harry* Mansdorf was not the same person. Thus, Harry Mansdorf had not been served individually or as the trustee of the Mansdorf Family Trust, and the trial court lacked subject matter jurisdiction. Second, the trial court failed to make an express determination as to whether it had subject matter jurisdiction, which Mansdorf asserted it was required to do.[5] Third, he argued that the judgment and order were void because they were based on extrinsic fraud. Among other things, Mansdorf asserted that McClanahan knew and concealed from the court that the proof of service of the summons and complaint was fraudulent, that she had no title to the parcels she allegedly conveyed to Mansdorf as trustee of the Mansdorf Family Trust, and that the award of damages was based on a forged deed, and "other insufficient and incompetent evidence." Mansdorf asserted that his right to due process had been violated by the defects in service, lack of jurisdiction, and extrinsic fraud, such that equity compelled vacation of the default and default judgment.

**Opposition**

McClanahan contended Mansdorf's motion to set aside the entry of default and default judgment was made in violation of section 1008, which provides for sanctions against a party who brings a subsequent application for the same order without support in new facts, circumstances, or law. She argued that the judgment was not facially invalid, as the Court of Appeal had already decided. This court determined in Mansdorf's previous appeal that service of the statement of damages was proper, and Mansdorf waived his arguments concerning service of the summons and complaint by failing to raise the issue in his appeal of the denial of his first motion. As a court of general jurisdiction, the trial court had subject matter jurisdiction over Mansdorf, and did not

_____

[5] Mansdorf did not challenge personal jurisdiction.

7

need to expressly determine its jurisdiction.  Finally, Mansdorf failed to make a showing of extrinsic fraud, and was barred from relitigating claims of intrinsic fraud or mistake.  Attached to the opposition were the following documents:

1.  The March 15, 2010 Notice of Ruling Denying Defendant's Motion to Set Aside the Default.

2.  This court's October 21, 2011 opinion affirming the court's denial of Defendant's Motion.

3.  The May 8, 2012 Minute Order from Department 51 denying Defendant's Ex Parte Motion to Set Aside Service, Default, and Default Judgment.

4.  The Mansdorf Trust Document attached to the First Amended Complaint in *Marilyn Mansdorf v. Rhoades et al.*, case number BC16011, referring to Mansdorf  as Harold, but signed by him as Harry.

5.  The Fourth Amendment to the Mansdorf  Family Revocable Trust, also attached to the First Amended Complaint in *Marilyn Mansdorf v. Rhoades et al.*, case number BC16011, referring to Mansdorf  as Harold and Harry, and signed by him as Harry.

6.  The Joint Venture Agreement between "Harry aka Harold Mansdorf" and Jaime Gonzalez, attached to the Third Party in Interest Objection to Application for Order to Sell the Property filed in this case.


**Trial Court's Ruling**


On June 21, 2012, the trial court ruled that Mansdorf had previously argued that jurisdiction was lacking due to defects in service, albeit on different grounds, and that the Court of Appeal ruled that service was proper and the motion was untimely.  With respect to Mansdorf's contention that the motion could be made at any time because the judgment was facially invalid, Mansdorf failed to establish that the court's decision to exercise subject matter jurisdiction must appear on the face of the record.  The court distinguished the case from *Brown v. Desert Christian Center* (2011) 193 Cal.App.4th

8

733, in which a jurisdictional defense had been raised that the court was bound to address. Finally, the court concluded Mansdorf failed to establish extrinsic fraud, noting that "[e]xtrinsic fraud goes to matters outside of the issues to be adjudicated, and involves a situation where a party is prevented from presenting his case to the court. . . . [¶] Defendant's arguments go to the merits of the prior proceeding, which is an allegation of intrinsic fraud."

## DISCUSSION

Appellant attempts to avoid the statute of limitations in one manner or another with each of his contentions, all of which lack merit.

### *Service of the Summons and Complaint*

Appellant first argues that service of the summons and complaint was improper. "Where a party moves under section 473, subdivision (d) to set aside 'a judgment that, though valid on its face, is void for lack of proper service, the courts have adopted by analogy the statutory period for relief from a default judgment' provided by section 473.5, that is, the two-year outer limit. (8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 209, pp. 814-815; *Rogers v. Silverman* (1989) 216 Cal.App.3d 1114, 1120-1124. . . .)" (*Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 180.) Section 473.5, subdivision (a) provides in pertinent part: "The notice of motion [to set aside the default or default judgment] shall be served and filed within a reasonable time, but in no event exceeding the earlier of: (i) two years after entry of a default judgment against him or her; or (ii) 180 days after service on him or her of a written notice that the default or default judgment has been entered."

Appellant contends the time limits in section 473.5 do not apply because the judgment is facially invalid, in that the summons and complaint were served on the wrong person. This is an argument Mansdorf made in his first motion to set aside,

9

reasoning that the description of him in the proof of summons did not exactly match the description on his driver's license. The trial court found that service of the summons and complaint was proper, and, as we noted in our opinion, Mansdorf did not challenge the ruling. Having failed to raise the issue in his opening brief in that appeal, Mansdorf waived the issue. (*Dieckmeyer v. Redevelopment Agency of City of Huntington Beach* (2005) 127 Cal.App.4th 248, 260.) He cannot now challenge the trial court's ruling. A "'prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable.'" (*Wade v. Ports America Management Corp.* (2013) 218 Cal.App.4th 648, 657 (*Wade*) [quoting *Sutphin v. Speik* (1940) 15 Cal.2d 195, 202].)[6] It is irrelevant that Appellant argues for the first time that "Harold Mansdorf," who was served, is not the same person as "Harry Mansdorf," or that the process server was exempt from registration and therefore the proof of service was not entitled to the presumption that service was proper. Both of these potential issues could have been discerned from the face of the proof of service and litigated previously, but were not. (*Wade*, *supra*, at p. 657.)

Applying the time limits of section 473.5 to this case, we hold that Mansdorf's motion to vacate was untimely. The default judgment was entered against Mansdorf on January 23, 2008. In April 2008, Mansdorf received an abstract of judgment notifying him of McClanahan's $12 million judgment. One hundred eighty days after April 2008 is earlier than two years after January 23, 2008. Mansdorf filed his second motion to vacate on May 22, 2012. Having been filed more than 180 days after service of notice of the default judgment, the motion to vacate was time-barred, (§ 473.5, subd. (a)), but even if Mansdorf's receipt of the abstract of judgment is not construed as written notice and the outer limit of two years were to apply, the motion was over two years late.

---

[6] To the extent that Appellant attempts to attack service of the statement of damages or the amount of damages awarded, the issues were decided on appeal and the principles of res judicata apply. (*Wade, supra,* 218 Cal.App.4th at p. 657).

*Jurisdiction*

Appellant next contends that the judgment is void because the trial court assumed it had personal jurisdiction, rather than expressly deciding that issue. The arguments underlying this contention are based on the alleged defects in service, issues which we determined were time-barred. Additionally, Appellant cites to no authority requiring that the court expressly determine its jurisdiction, nor are we aware of any such precedent. Accordingly, this contention fails.

**Extrinsic Fraud**

Next, Appellant contends that the judgment is void because it was obtained by extrinsic fraud. A motion to set aside a judgment may be brought at any time despite a statutory time bar where a party is able to establish that default was obtained through extrinsic fraud. (*In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 937.) "Extrinsic fraud occurs when a party is deprived of the opportunity to present a claim or defense to the court as a result of being kept in ignorance or in some other manner being fraudulently prevented by the opposing party from fully participating in the proceeding." (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228-1229 (*Gorham*).) Extrinsic fraud is distinguishable from intrinsic fraud, "[which] goes to the merits of the prior proceeding and is 'not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary but has unreasonably neglected to do so. [Citation.] Such a claim of fraud goes to the merits of the prior proceeding which the moving party should have guarded against at the time.' [Citation.]" (*In re Margarita D.* (1999) 72 Cal.App.4th 1288, 1295.) "Because of the strong public policy in favor of the finality of judgments, equitable relief from a default judgment or order is available only in exceptional circumstances." (*Gorham*, *supra*, at pp. 1229-1230.) "We review the court's denial of a motion for equitable relief to vacate a default

11

judgment or order for an abuse of discretion, determining whether that decision exceeded the bounds of reason in light of the circumstances before the court." (*Id*. at p. 1231.)

Here, the trial court did not abuse its discretion. Appellant's claims of extrinsic fraud rest on his assertions that McClanahan knew and concealed from the court that the proof of service of the summons and complaint was fraudulent, that she intended to serve the wrong person, that she sought service by publication of the statement of damages to deprive Mansdorf of notice, and that the lawsuit and award of damages were based on a forged deed when, in fact, McClanahan had no title to or interest in the properties purportedly conveyed. These are all issues that could have been, or were, decided in the prior proceeding, and thus constitute intrinsic fraud.[7] There has been no showing that Appellant was "deprived of the opportunity to present a claim or defense to the court as a result of being kept in ignorance or in some other manner being fraudulently prevented by the opposing party from fully participating in the proceeding," warranting equitable relief. (*Gorham*, *supra*, 186 Cal.App.4th at pp. 1228-1229.)

### *Due Process*

Finally, we reject Appellant's argument that Mansdorf was denied his right to due process and a fair trial due to the defects in service, lack of jurisdiction, and extrinsic fraud. Having determined there is no merit to any of these contentions, we necessarily conclude that Mansdorf was given "notice and a meaningful opportunity to present evidence." (*Rea v. Workers' Comp. Appeals Bd*. (2005) 127 Cal.App.4th 625, 643.)

---

[7] The "fraudulent" deed to which Appellant refers was attached to the complaint.

12

**DISPOSITION**

The judgment is affirmed.  The parties are to bear their own costs on appeal.


KRIEGLER, J.

We concur:


TURNER, P.J.


MOSK, J.